UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER NIKOLA PESIC; PETER PESIC & CO.
ADVISORS,

                    Plaintiffs,

          -against-

MAURITIUS INTERNATIONAL
ARBITRATION CENTRE LIMITED; SALIM
MOOLLAN; ASRAF ALLY CAUNHYE; NEIL
ROGERS; DOES 1 to 10,

                    Defendants.

1:23-CV-1100 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

          Plaintiffs Peter Nikola Pesic and Peter Pesic & Co. Advisors ("Plaintiff Advisors"), who

appear *pro se*,[1] filed this action invoking the court's federal question jurisdiction by asserting

claims under the federal Racketeer Influenced and Corrupt Organization Act ("RICO"). Plaintiff

also appears to invoke the court's diversity jurisdiction, seemingly asserting claims under state

law. Plaintiff asserts that he is an American citizen (ECF 4, at 19), and he appears to reside in

---

[1] The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit on behalf of another entity. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). While "some courts allow sole proprietorships to proceed pro se [because] a sole proprietorship has no legal existence apart from its owner," *Lattanzio*, 481 F.3d at 140 (citation omitted), courts generally do not allow corporations, partnerships, associations, and other "artificial entities" to appear in court without an attorney, *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202-03 (1993).

          An amended complaint is the operative pleading for this action. (ECF 4.) Because Plaintiff Pesic does not allege that he is an attorney, and asserts that Plaintiff Advisors is a sole proprietorship (*id.* at 1), the Court understands that Plaintiff Advisors has no legal existence apart from Plaintiff Pesic, and that Plaintiff Pesic is the true plaintiff in this action. The Court will therefore collectively refer to both plaintiffs as "Plaintiff" in this order.

Geneva, Switzerland, though the Court notes that Plaintiff asserts that he signed his amended complaint in Bulawayo, Zimbabwe (*id.* at 20). Plaintiff sues: (1) the Mauritius International Arbitration Centre Limited ("MIAC"), which he describes as "a Mauritian Legal Entity" that is located in Port Louis, Mauritius; (2) Salim Moollan, whom he describes as a member of the MIAC Board of Directors, but whose citizenship he does not know; (3) Asraf Ally Caunhye, whom he describes as a MIAC arbitrator and a citizen of Mauritius; (4) Neil Rogers, whom he describes as an "Australian investor"; and (5) "currently unknown Defendants that may[,] at a later date[,] be discovered and added as Defendants as DOES 1 to 10." (*Id.* at 4-5.) Plaintiff seeks as relief what appear to be: (1) an unspecified amount of compensatory damages that exceeds the sum or value of $75,000; (2) punitive damages in the amount of $7,500,000, and; (3) a finding by the Court that "MIAC [is] . . . an organization shielding and concealing fraudulent criminal activities, and [that it] . . . should be appropriately . . . placed upon the United States Office of Foreign Assets Control['s] . . . list and be subject to the appropriate statutory sanctions." (*Id.* at 20.)

Plaintiff has paid the fees to bring this action, but the Clerk of Court has not issued summonses. For the following reasons, the Court dismisses this action, but grants Plaintiff 60 days' leave to file a second amended complaint.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring a civil action, if the Court determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), that the Court lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), or that the Court is a wrong venue, *see* 28 U.S.C. § 1406(a). The Court can also dismiss a complaint, or portion thereof, for failure to state a claim on which relief may be

granted after giving the plaintiff notice and an opportunity to be heard. *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). ).

District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim. . . . " *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

## BACKGROUND

Plaintiff alleges the following: Plaintiff is a financial advisor who is registered with the United States Securities and Exchange Commission ("SEC"), and whose office is located in Geneva, Switzerland. "[I]n that capacity, Plaintiff holds in custody certain U.S. securities[,] including Alkaline Water Company, Inc. . . . (hereinafter 'Relevant United States Securities')[,] deposited in the Depositary Trust and Clearing Corporation (hereinafter 'DTCC')." (ECF 4, at 4.) "Relevant United States Securities are held in DTCC requiring of Plaintiff to obtain and hold on file documents related to [the] identity of beneficial owner(s) of Relevant United States Securities and the manner in which these securities were acquired." (*Id.* at 7.) A person named Barry Thomas Tilley, an Australian citizen, "claims to be [the] [u]ltimate [b]eneficial [o]wner[] of Relevant United States Securities held in custody with the Plaintiff." (*Id.*) A person named Dya Ghose-Radhakeesoon, a Mauritian citizen and an attorney, represents Tilley, as well as Talinka Trading, Inc. ("Talinka"), a Samoan corporation, of which Tilley claims to be the "sole

beneficial owner." (*Id.* at 6.). "No contract exists between Mr. Tilley or Talinka . . . and the Plaintiff, nor are Mr. Tilley or Talinka . . . Plaintiff's clients." (*Id.* at 7.)

"DTCC rules require that Talinka . . . and Mr. Tilley must produce the new and accurate Know Your Client (hereinafter 'KYC') and Anti-money Laundering documents (hereinafter 'AML,' collectively 'AML/KYC') documents, updated to the current date, prior to any transactions taking place." (*Id.*) As Plaintiff has not received "a thorough explanation of the inconsistencies in. . .Talinka['s] . . . [or] . . . Tilley's KYC/AML documentation [on file with him], the Plaintiff is unable to assess compliance risk factor[s] as mandated by [the] USA PATRIOT Act . . . and the Banking Secrecy Act . . . , nor can Relevant United States Securities be moved or transferred via DTCC." (*Id.*).

On October 19, 2022, Ghose-Radhakeesoon, Tilley's attorney, requested "International Arbitration under the Landon Court of International Arbitration – Mauritius International Arbitration Centre Limited (hereinafter 'LCIA-MIAC' or 'MIAC') . . . demanding . . . that Relevant United States Securities be transferred to an account with Kaiser Private Bank located in Vaduz, Liechtenstein, . . . while refusing to provide . . . required KYC/AML documentation."[2] (*Id.* at 7-8.)

Plaintiff hired a private investigator "to locate and verify the domicile and existence of Mr. Tilley," but the investigator was unsuccessful. (*Id.* at 8.). Plaintiff believes that the copy of Tilley's expired passport that he has on file is actually a copy of the passport of an Australian real-estate developer, also known as Barry Thomas Tilley, and not that of the "fictitious" Tilley "who has submitted [a] Curriculum Vitae showing that he is a retired pharmacist and who also

---

[2] Plaintiff asserts that he "is a separate legal entity from [the] Related Parties referenced [in his amended complaint] and is not a party to International Arbitration nor is he a party to any court proceedings." (ECF 4, at 4.)

provided a false proof of address and is clearly evading [a] face-to-face meeting with[] the"
private investigator. (*Id.* at 9.) "Plaintiff must be provided with sufficient documentation to
determine [the] identity of [the Ultimate Beneficial Owner] of Relevant United States Securities
and confirm a legal origin of the money utilized to purchase" them, pursuant to the requirements
of the USA PATRIOT Act and the Banking Secrecy Act, to allow for transfer of those securities
via DTCC. (*Id.* at 9-10.) Ghose-Radhakeesoon has been "instrumental in shielding . . . Tilley's
true identity by providing misleading statements to MIAC and omitting material facts thus
obstructing and 'derailing' [MIAC] arbitration proceedings." (*Id.* at 11.)

Plaintiff believes that Tilley "is a nominee i.e. [a] 'straw' owner of Talinka." (*Id.* at 10.)
"In an email available to Plaintiff, . . . Tilley claims to have purchased [the] Relevant United
States Securities with his own money." (*Id.*) Yet "documents on file show that . . . Tilley
acquired . . . [them] from Defendant [Neil Rogers,] an Australian citizen, by assuming part of the
[a] debt note[;] $250,000 . . . out of [the] face value of [a] note of $750,000 . . . to the issuer[,]
Alkaline Water Company, Inc." (*Id.*) Plaintiff asked his private investigator to confirm Roger's
Australian address, as noted in SEC filings; the private investigator could not confirm the
address as that of Rogers. Plaintiff asserts that Rogers "acquired Relevant United States
Securities improperly and has likely committed fraud on the United States through his . . . SEC
filing." (*Id.* at 11.)

On November 11, 2022, MIAC instructed Talinka and Tilley, "in the arbitration
proceedings . . . before MIAC[,] [to] make a payment of $7,000 . . . to cover the cost of the
arbitration, knowing or . . . [being] reckless by not knowing[] that . . . [Tilley's identity] cannot
be determined nor can he be located." (*Id.* at 15.) In doing so, "MIAC . . . committed an act of
attempted money laundering." (*Id.* at 15-16.)

On November 18, 2022, "attorneys representing the Broker," the respondent in the MIAC arbitrator proceeding, wrote a letter to MIAC asking that the arbitration not proceed due to Tilley's repeated failure to provide "KYC/AML compliance documentation" to that respondent.[3] (*Id.* at 11-12.) MIAC, which has "operated as an independent arbitration center since July 27, 2018[,] . . . has refused to implement compliance procedures . . . such [as] the AML/KYC compliance requirements." (*Id.* at 12.) MIAC's arbitration rules reflect its "desire [for] the opportunity to allow terrorists, criminals, and corrupt politicians to secretly, through the use of [a] confidentiality clause, litigate outside of international law as it applies worldwide, in violation of [the] United States of America's laws and any court orders that might be in place." (*Id.* at 13.) Such rules present a security risk to the United States.

MIAC decided to proceed with the arbitration, despite the lack of verified identification or domicile documents for Tilley, the "Ultimate Beneficial Owner of the Relevant United States Securities." (*Id.* at 15.). On January 20, 2023, MIAC instructed Talinka and Tilley "to make [a] substitute payment of $7,000 . . . to cover additional cost[s] of the arbitration, due to the fact that [the] [r]espondent, the [b]roker[,] refused to remit any funds to MIAC."[4] (*Id.* at 16.) When it did so without being able to verify Tilley's identity or domicile, MIAC "committed an[other] act of attempted money laundering." (*Id.* at 16.)

MIAC instructed Talinka to make an additional payment of $10,000 to MIAC for the cost of arbitration proceedings; Talinka paid MIAC that amount on March 8, 2023. Fourteen days later, on March 22, 2023, MIAC instructed Talinka "to make yet another substitute $10,000 . . . payment

---

[3] Because Plaintiff asserts that he is not a party to any international arbitration (ECF 4, at 4), it is unclear whether Plaintiff is alleging that he is the abovementioned respondent and, therefore, is a party to the arbitration.

[4] Again, it is unclear whether Plaintiff is the abovementioned respondent broker.

to cover the cost of arbitration proceedings." (*Id.* at 13.) In neither of those instances did MIAC confirm Tilley's identity.

Shortly after Talinka and Tilley paid $7,000 to MIAC "to cover the cost[s] of arbitration, . . . MIAC . . . committed an act of [actual] money laundering." (*Id.* at 16.) "MIAC has no idea who . . . [it took] the money from[,] . . . nor . . . [did it] care[] enough to make an effort to determine if such act would be appropriate or legal." (*Id.* at 16-17.) "MIAC is attempting to force Plaintiff into violating laws of the United States or be severely penalized if not doing so." (*Id.* at 18.)

Defendant Salim Moollan is a member of the MIAC Board of Directors and is aware of MIAC's illegal activities, but "he continues to support [them] . .  by ensuring that [MIAC] does not have to comply with either [American] anti-money laundering laws . . . or know your client requirements that are in place in all jurisdictions of that are part of [t]he Hague Convention." (*Id.* at 14.)

Defendant Asraf Ally Caunhye is the arbitrator of the relevant MIAC arbitration proceedings and is a former Chief Justice of the Supreme Court of Mauritius.

## DISCUSSION

### A.    Subject matter jurisdiction

The amended complaint does not allege facts sufficient to show that the Court has subject matter jurisdiction of Plaintiff's claims. To show that a federal court has subject matter jurisdiction to consider his action, a plaintiff must show that he has standing to raise his claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). The subject matter jurisdiction of the federal district courts is also statutorily limited, and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's subject matter jurisdiction is available when a "federal question" is presented or, if asserting claims under state law under the court's diversity jurisdiction, when, among other circumstances, the plaintiff is a citizen of an

American State, the defendant is a citizen of another American State or a citizen or subject of a

foreign country, and the amount in controversy exceeds the sum or value of $75,000. *See* 28

U.S.C. §§ 1331, 1332(a)(1), (2). "'[I]t is common ground that in our federal system of limited

jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the

question of whether the court has subject matter jurisdiction.'" *United Food & Commercial*

*Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298,

301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711

F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time

that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG*, 526

U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own

initiative.").

### 1.    Standing

The amended complaint does not show why Plaintiff has standing to bring any of his

claims, regardless of whether he brings them under federal or state law. Article III, Section 2, of

the Constitution limits the jurisdiction of the federal courts "to the resolution of cases and

controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citation and

internal quotation marks omitted). "Standing to sue or defend is an aspect of the case-or-

controversy requirement." *Arizonians for Official English v. Arizona*, 520 U.S. 43, 64 (1997). To

demonstrate standing, a plaintiff must show that: (1) he has personally suffered some actual or

threatened injury as a result of the defendant's alleged illegal conduct; (2) the injury is fairly

traceable to the defendant's conduct; and (3) the injury is likely to be redressed by the requested

relief. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State,*

*Inc.*, 454 U.S. 464, 472 (1982). The burden of establishing standing to sue rests with the party

bringing the action. *See Lujan*, 504 U.S. at 561. Moreover, "a generalized grievance, no matter

how sincere, is insufficient to confer standing. A litigant . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks and citation omitted)."'If [a] plaintiff[] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.'" *Mahon*, 683 F.3d at 62 (internal quotation marks and citation omitted); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction . . . is an Art. III as well as a statutory requirement . . . .").

Plaintiff asserts that on November 11, 2022, MIAC, a Mauritian organization that conducts arbitrations, instructed parties to a MIAC arbitration proceeding, of which Plaintiff alleges he is not a party, to pay MIAC $7,000 for the cost of arbitration, and that on January 20, 2023, it directed the same parties to pay it an additional $7,000 to cover additional costs of arbitration. (ECF 1, at 13-15.) Plaintiff alleges that in doing so, MIAC committed acts of attempted money laundering, and when it accepted payment of $7,000, it committed an act of actual money laundering.[5] (*Id.*) Plaintiff, however, does not allege facts sufficient to show that he has personally suffered some actual or threatened injury as a result of MIAC's alleged illegal conduct, that his injury is fairly traceable to that conduct, and that the injury is likely to be redressed by the requested relief. The Court therefore dismisses Plaintiff's claims for lack of standing, and consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

---

[5] Plaintiff also alleges that MIAC instructed Talinka to make two additional $10,000 payments to MIAC in March 2023. (ECF 4, at 13.)

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 60 days' leave to file a second amended complaint in which he alleges facts sufficient to demonstrate that he has standing to raise his claims.

### 2.    Diversity jurisdiction

Plaintiff also does not allege facts sufficient to show that the Court can consider his claims under state law under the court's diversity jurisdiction. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that he or she and the defendants are citizens of different American States; a party may alternatively be a citizen or subject of a foreign country, so long as that party is not lawfully admitted for permanent residence in the United States and domiciled in the same American State where the opposing party is a citizen. *See* § 1332(a)(1), (2). For diversity jurisdiction purposes, an individual is considered to be a citizen of the American State where he or she is domiciled, which is defined as the American State where he or she "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* "United States citizens domiciled abroad[,] [however,] are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *The Herrick Co., Inc. v. SCS Commc'n's, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (internal quotation marks and citation omitted).

In addition, for diversity jurisdiction, the plaintiff must allege to a "reasonable probability" that his or her claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiff alleges that Defendant Caunhye is a citizen of Mauritius and that Defendant Rogers is a citizen of Australia. The Court assumes, for the purpose of this order, that Defendant MIAC is also a citizen of Mauritius. Plaintiff, however, does not allege the citizenship of Defendant Moollan. Moreover, Plaintiff asserts that he is an American citizen but, though he does not specify his domicile, it appears that he is domiciled in Switzerland. Thus, the parties are not diverse, and it appears that the Court lacks diversity jurisdiction to consider Plaintiff's claims under state law. The Court therefore dismisses Plaintiff's claims under state law, brought under the court's diversity jurisdiction, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 60 days' leave to file a second amended complaint in which he alleges facts showing that the Court has diversity jurisdiction to consider his claims under state law. Among the facts that Plaintiff must allege are those showing that the parties are diverse; Plaintiff must specifically allege Moollan's citizenship, as well as facts showing that, at the time that he filed his original complaint, Plaintiff was a citizen of an American State and not domiciled in a foreign country. *See, e.g.*, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (internal quotation marks and citation omitted).

**B.    Claims under RICO**

Plaintiff asserts claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages . . . ." 18 U.S.C.

§ 1964(c). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting Section 1962(a)-(c)). He must also "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (quoting § 1964(c)) (italics in original).

Plaintiff does not provide any facts that would support a civil claim under RICO. As discussed above, Plaintiff's allegations concern a MIAC arbitration proceeding of which he alleges he is not a party. The Court therefore dismisses Plaintiff's civil claims under RICO for failure to state a clam on which relief may be granted, but grants Plaintiff 60 days' leave to file a second amended complaint to allege facts sufficient to state such a claim.

**C.    Venue**

Plaintiff's amended complaint does not demonstrate why this court is a proper venue for his claims. Under the venue provision for civil claims brought under RICO, such claims "against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."[6] 18 U.S.C. § 1965(a).

Under the general venue provision, which applies to claims brought under the court's diversity jurisdiction, a federal civil action may be brought, unless otherwise provided by law, in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the [American] State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim

---

[6] For the purpose of this statute, the term "person" "includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

occurred, or a substantial part of property that is the subject of the action is
situated; or (3) if there is no district in which an action may otherwise be brought
as provided in this section, any judicial district in which any defendant is subject
to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Under this provision, a "natural person" resides in the federal judicial

district where the person is domiciled, and any other entity with the capacity to sue and be sued,

if a defendant, resides "in any judicial district in which such defendant is subject to the court's

personal jurisdiction with respect to the civil action in question." § 1391(c)(1), (2).

With respect to Plaintiff's claims under RICO, Plaintiff alleges no facts showing that any

of the defendants resides, is found, has an agent, or transacts their affairs within this or any other

federal judicial district.[7] Moreover, as to Plaintiff's claims under state law, brought under the

court's diversity jurisdiction, Plaintiff alleges no facts showing that any of the defendants resides

within this or any other federal judicial district, a substantial part of the events or omissions

giving rise to his claims occurred within this or any other federal judicial district, a substantial

part of property that is the subject of this action is situated within this or any other federal

judicial district, or that any of the defendants is somehow subject to this court's or any other

federal district court's personal jurisdiction with respect to this action. Thus, Plaintiff has not

alleged facts sufficient to show that this court, or any other federal district court, is a proper

venue for his claims under RICO or under state law.[8]

---

[7] This federal judicial district – the Southern District of New York – is comprised of the
following New York State counties: (1) New York (New York City Borough of Manhattan);
(2) Bronx (New York City Borough of the Bronx); (3) Westchester; (4) Dutchess; (5) Rockland;
(6) Orange; (7) Putnam; and (8) Sullivan. *See* 28 U.S.C. § 112(b).

[8] With respect Plaintiff's claims under both RICO and state law, Plaintiff asserts that this
court is a proper venue because "the transactions mentioned [within the amended complaint]
were settled by custodial banks located in New York, New York." (ECF 4, at 19.) Such
allegations are insufficient to show that this court is a proper venue for any of Plaintiff's claims.

Under 28 U.S.C. § 1406(a), if a plaintiff files an action in the wrong venue, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because Plaintiff has not alleged facts sufficient to show that this court, or any other federal district court, is a proper venue for this action, the Court determines that it is not in the interest of justice to transfer this action. The Court therefore dismisses this action as filed in the wrong venue. *See id.*

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 60 days' leave to file a second amended complaint in which he alleges facts sufficient to show that this court is a proper venue for his claims.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims for lack of standing, and consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court also dismisses Plaintiff's claims under state law, brought under the court's diversity jurisdiction, for lack of subject matter jurisdiction. *See id*. The Court further dismisses Plaintiff's civil claims under RICO for failure to state a claim on which relief may be granted. The Court additionally dismisses Plaintiff's claims as brought in the wrong venue. *See* 28 U.S.C. § 1406(a).

The Court, however, grants Plaintiff 60 days' leave to file a second amended complaint, as specified above. If Plaintiff fails to file a second amended complaint within the time allowed, or fails to show cause why the Court should excuse such failure, the Court will enter judgment dismissing this action for the reasons set forth in this order. The Clerk of Court shall not issue summonses unless ordered by the Court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   April 17, 2023
         New York, New York

                                                    /s/ Laura Taylor Swain
                                                   LAURA TAYLOR SWAIN
                                              Chief United States District Judge

15