UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
PETER NIKOLA PESIC et al., :
:
Plaintiffs, :
: 23-CV-1100 (JMF)
-v- :
: MEMORANDUM OPINION
MAURITIUS INTERNATIONAL ARBITRATION : AND ORDER TO
CENTRE LTD. et al., : SHOW CAUSE
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Peter Nikola Pesic, proceeding without counsel, brings claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962 *et seq.*, against a host of entities and people, some based in the United States, some based in Mauritius, and some based elsewhere. *See* ECF No. 44 ("Compl.").[1] In his operative complaint, the Fourth Amended Complaint, Plaintiff alleges that Defendants engaged in or enabled a scheme to launder money through the acquisition and transfer of securities previously held by his firm. *See, e.g.*, *id.* ¶¶ 48, 57, 58. He contends that he suffered two forms of harm as a result: first, reputational harm and, second, fees and costs incurred in connection with his holding of the securities. *See*

---

[1] Strictly speaking, the suit is brought by both Pesic and Peter Pesic & Co. Advisors ("Plaintiff Advisors"). In an earlier order, the Court explained that because Pesic "does not allege that he is an attorney, and asserts that Plaintiff Advisors is a sole proprietorship, the Court understands that Plaintiff Advisors has no legal existence apart from Plaintiff Pesic, and that Plaintiff Pesic is the true plaintiff in this action. The Court will therefore collectively refer to both plaintiffs as 'Plaintiff' in this order." ECF No. 9, at 1 n.1 (citation omitted). The Court does the same here, without prejudice to any future argument by a Defendant that doing so is improper.

*id.* ¶¶ 46, 140, 141.  He seeks a combined amount of $171,789.23 in compensatory and punitive damages.  *See id.* at 54.

Although Plaintiff filed the case in February 2023, it has not gotten very far.  In an Order (by Chief Judge Laura Taylor Swain) entered on April 17, 2023, the Court dismissed Plaintiff's first complaint on the ground that he lacked Article III standing to bring any of his claims in federal court, but granted Plaintiff leave to file a Second Amended Complaint.  *See* ECF No. 9.  Thereafter, Plaintiff amended twice and, on August 31, 2023, the Court dismissed many of his claims again.  *See* ECF No. 17.  Most relevant for present purposes, the Court dismissed Plaintiff's RICO claims on the ground that they were filed in the wrong venue, even as it expressed doubt that Plaintiff had "alleged facts sufficient to show that he ha[d] standing with regard to his civil claims under RICO."  *Id.* at 3.  Nearly a year later, Plaintiff filed a motion to add defendants, ECF No. 40, which the Court construed as a motion for leave to file the Fourth Amended Complaint and granted, citing Plaintiff's "*pro se* status and the status of the case," ECF No. 41.  Plaintiff then filed the operative Fourth Amended Complaint, which not only added defendants but also revived Plaintiff's previously dismissed RICO claims.

To date, the Court has not reviewed the sufficiency of the Fourth Amended Complaint.  Instead, since Plaintiff filed the Fourth Amended Complaint, litigation has largely focused on Plaintiff's efforts to serve some Defendants.  *See* ECF Nos. 42-63.  On that score, now pending are three motions filed by Plaintiff: first, a motion for judicial assistance in effecting service on Defendants located in Mauritius, *see* ECF No. 51, and, second, two motions to effect service by publication on two Defendants located in the United States, Robert Sawatsky and Edgemode,

2

Inc., *see* ECF Nos. 60, 63.[2] The Court does not, however, address the substance of these motions here. That is because, upon review of the Fourth Amended Complaint, the Court is inclined to believe that Plaintiff's claims should be dismissed for failure to state a claim, albeit perhaps with leave (once again) to amend to bring a contract claim against three Defendants: Sawatsky, Talinka Trading Inc. ("Talinka Trading"), and Barry Tilley. Accordingly, and mindful that dismissal of a *pro se* complaint without giving the plaintiff notice and an opportunity to be heard is disfavored, the Court orders Plaintiff to show cause in writing why his Fourth Amended Complaint should not be dismissed. In light of that, the Court denies Plaintiff's pending motions, without prejudice to renewal in the event that the Court concludes that the Fourth Amended Complaint can survive.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when, as here, the plaintiff has paid the fees to bring a civil action, if it determines either that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam), or that the Court lacks subject-matter jurisdiction, *see* Fed. R. Civ. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "[I]n certain circumstances a *sua sponte* dismissal" for failure to state a claim also "may be appropriate" if "it is unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018). Generally, however, the Court may dismiss an action on this ground only if "the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (internal quotation

---

[2] In addition, Plaintiff recently sought a certificate of default as to Defendant Alkaline Water Company Inc. See ECF Nos. 64-65.

3

marks omitted). In addition, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them "to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

## DISCUSSION

As noted, the Court previously dismissed Plaintiff's RICO claims on the ground that they were filed in the wrong venue. *See* ECF No. 17, at 3. At the same time, the Court noted it was "doubtful" that Plaintiff "ha[d] standing with regard to his civil claims under RICO." *Id.* Plaintiff revived his RICO claims in his Fourth Amended Complaint — despite seeking leave only to add Defendants — and that pleading may have cured the venue problems with his earlier pleading (the Court intimates no view). But, upon reflection, the Court is inclined to conclude that Plaintiff does not allege facts sufficient to support standing.

To bring a civil RICO claim, a plaintiff must first demonstrate "RICO standing," for which he must have been "injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) ("[I]n order to have standing, a plaintiff must show: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation."). Unlike a lack of constitutional standing, a "lack of RICO standing does not divest [a] court of jurisdiction," but instead warrants "dismissal . . . for failure to state a claim." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116-17 (2d Cir. 2003).

Plaintiff's allegations of injury do not seem sufficient to satisfy this requirement. First, the "generalized reputational harms [Plaintiff] allege[s]" seem "too speculative to constitute an injury to business or property." *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16

(2d Cir. 2006) (summary order).  Plaintiff claims Defendants caused "injury to his business reputation," Compl. 54, by sending him threatening messages, *id.* ¶ 137, and by creating websites with false information purporting to represent his business, *id*. ¶ 138.  But reputational injury supports a RICO claim only if a plaintiff can point to "actual economic losses" such as those resulting from a "specific lost business opportunity" and show how they occurred "as a result" of the defendant's actions.  *Reich v. Lopez*, 38 F. Supp. 3d. 436, 450 (S.D.N.Y. 2014); *accord Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613-14 (S.D.N.Y. 2015) (stating that "mere injury to . . . business reputation . . . [is] not actionable under civil RICO" absent "concrete financial loss" and a "causal connection" (cleaned up)).  Plaintiff neither cites any specific harms he has suffered nor connects those harms to Defendants' conduct.  Accordingly, the Court is inclined to conclude that Plaintiff's "wholly conclusory assertion[s] of reputational harm" are insufficient to establish an injury under RICO.  *See Glob. Merch. Cash Inc. v. Rome-Aire Servs., Inc.*, No. 24-CV-799 (ARR), 2024 WL 4515654, at *10 n.9 (E.D.N.Y. Oct. 17, 2024).

By contrast, Plaintiff's allegations of financial injury appear to be sufficiently concrete to show injury for purposes of the RICO Act.  For example, he alleges that he incurred costs related to some of the relevant securities by "engag[ing] the services of third-party providers to perform Client Due Diligence review and risk assessment" on them and that he is owed "cost and charges for custody" as well.  Compl. ¶ 46.  And he makes similar claims regarding a second set of securities.  *See id.* ¶ 141 (claiming "accumulated unpaid custody fees, deposit fees, and due diligence fees for receiving and holding Relevant United States Securities").  These allegations of "concrete financial loss" seem sufficient "to show injury under RICO."  *Astorino*, 137 F. Supp. 3d at 613.

But Plaintiff still does not appear to connect these harms to Defendants' alleged RICO violations. RICO's causation requirement "is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged." *Lerner*, 318 F.3d at 120. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 138 (2d Cir. 2023). Here, many of the alleged RICO violations seem to lack even an attenuated link to Plaintiff's injury. For example, he claims that one Defendant, an arbitration platform, and other Defendants involved in its operations made an "intentional decision not to enact" a rule requiring identity verification, which made it easier for Defendants to use arbitration in Mauritius in furtherance of money laundering. *See* Compl. ¶ 113. Other alleged actions by Defendants involve Plaintiff more directly — such as sending Plaintiff letters demanding that he transfer securities to certain entities, *see id.* ¶ 114 — but even these actions do not seem to be "substantial factor[s] in the sequence of responsible causation" for the costs Plaintiff incurred by holding the securities, *Baisch v. Gallina*, 346 F.3d 366, 373-74 (2d Cir. 2003). In fact, Plaintiff himself alleges that Defendants were asking him to divest the securities, not hold them. *See, e.g.*, Compl. ¶¶ 60-61 (describing "phone call . . . demand[ing] that the [securities] be transferred via DTCC to an account at Kaiser while relying on forged identity documents"). For that reason, these allegations too seem insufficient for RICO standing.

For these reasons, Plaintiff's RICO claims would seem to fall short and warrant dismissal. If so, the question would arise whether Plaintiff should be given leave to file yet another amended complaint. If the Court dismisses, there are certainly reasons to do so without granting such permission. Among other reasons, Plaintiff has been given multiple opportunities to cure the deficiencies in his claims. But at the same time, Plaintiff is proceeding *pro se* and,

thus, should be granted special solicitude. Moreover, consistent with the Court's earlier observations, *see* ECF No. 17, at 4, Plaintiff's allegations might be able to support a claim under state law for breach of contract against Defendants Sawatsky, Talinka Trading, and Tilley. For example, the Fourth Amended Complaint alleges that Sawatsky owes Plaintiff "unpaid custody fees, deposit fees and due diligence fees for receiving and holding Relevant United States Securities on behalf of Defendants . . . in the amount of $96,687[.]24." Compl. ¶ 141. Similarly, it alleges that Talinka Trading "owes the Plaintiff a total of $75,101.99" under a "client agreement" and "refuses to pay any sum at all." *Id.* ¶ 46. And it alleges that Tilley is the "sole beneficial owner" of the securities Plaintiff held for Talinka Trading, which might make Tilley liable for Plaintiff's costs. *Id.* ¶ 14.

To state a claim for breach of contract, however, Plaintiff would need to include in his pleading details about the agreements under which Sawatsky, Talinka Trading, and Tilley would be liable to him. *See, e.g.*, *Shake Shack Enters., LLC v. Brand Design Co., Inc.*, 708 F. Supp. 3d 515, 523 (S.D.N.Y. 2023) (observing that a plaintiff suing for breach of a contract "must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." (collecting cases)). Those pertinent facts are missing from the Fourth Amended Complaint.

It is also unclear whether, in the absence of a claim under federal law, this Court would have subject-matter jurisdiction. As the Court noted in an earlier Order, *see* ECF No. 9, at 10, "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties," *Creswell v. Sullivan &*

7

*Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990).  A party's domicile is determined by "examin[ing] the entire course of a person's conduct," including "where a person resides, whether he owns a home or pays rent, where his family and personal belongings are located, where he maintains affiliations with religious and social organizations, where he transacts business and financial matters, where he pays personal taxes, and where he obtained a drivers license." *Brignoli v. Balch, Hardy & Scheinman, Inc.*, 696 F. Supp. 37, 41 (S.D.N.Y. 1988) (cleaned up).  The overarching question is whether the parties at issue have established "residence in fact, coupled with the purpose to make the place of residence [their] home." *Id.* at 40.

Here, Plaintiff asserts that he is a "citizen of the State of California," Compl. ¶ 147, and "intends to return" there, *id.* ¶ 3.  Yet he also says he currently conducts his affairs in Switzerland, *see id.* ¶ 6, and he has used his Switzerland address for the nearly two-year duration of this lawsuit, *see* ECF No. 1.  Thus, there are reasons to doubt that Plaintiff qualifies as a citizen of California for purposes of diversity jurisdiction.

## CONCLUSION

For these reasons, Plaintiff is ORDERED to show cause in writing, **no later than December 16, 2024**, (1) why the Fourth Amended Complaint should not be dismissed for failure to allege RICO standing; and (2) why he should not be denied leave to file a Fifth Amended Complaint.  As to the latter, Plaintiff should address both (a) whether he could allege a plausible contract claim against Sawatsky, Talinka Trading, and Tilley and (b) whether the Court would have subject-matter jurisdiction to entertain it, specifically whether he qualifies as a citizen of California or should be treated as a U.S. citizen domiciled abroad.  Plaintiff's submission should take the form of **a memorandum of law, not to exceed fifteen pages, and a personal declaration (under penalty of perjury) addressing the facts that inform the domicile**

**inquiry**, including where Plaintiff resides, whether he owns a home or pays rent, where his family and personal belongings are located, where he maintains affiliations with religious and social organizations, where he transacts business and financial matters, where he pays personal taxes, and where he obtained his driver license.  *See Brignoli*, 696 F. Supp. at 41.

Plaintiff's three outstanding motions and his request for a certificate of default as to Defendant Alkaline Water Company Inc. are DENIED without prejudice to renewal if or when appropriate.  The Clerk of Court is directed to terminate ECF Nos. 51, 60, 63.

SO ORDERED.

Dated: November 19, 2024
       New York, New York

                                            JESSE M. FURMAN
                                        United States District Judge